In the United States District Court
For the Southern District of Texas
Galveston Division

| | |
|---|---|
| Donald Lloyd Davis Jr., <br> TDCJ # 01762796, <br>     Plaintiff <br><br> v. <br><br> Angela Ogbebor, <br>     Defendant | §§§§§§§§    Civil Action No. 3:20-CV-00381 |

## Plaintiff's Motion for New Trial

Plaintiff Donald Lloyd Davis Jr. asks the Court to vacate its final judgment and grant a new trial in this matter because

1. the jury's verdict was against the great weight of the evidence;

2. there is substantial and ineradicable doubt about whether the jury was properly guided by the instructions it was given and whether it reached a proper verdict as a result;

3. the submission of the defective jury charge violated Mr. Davis's substantial rights.

### Context of the Motion

Donald Lloyd Davis sued Angela Ogbebor for subjecting him to cruel and unusual punishment, in violation of the Eighth Amendment to the U.S. Constitution, when she sprayed 2.5 ounces of a chemical agent on the back of his head at point blank range (forcing him to undergo a decontamination shower), while he was fully restrained in handcuffs and leg irons, and cut his wrists by jerking on his shackles unnecessarily. Dkt. 64 at 2–3.

Mr. Davis's claims were tried to a jury on June 4 to 6, 2024. The jury heard testimony from several witnesses, including Mr. Davis, Ms. Ogbebor, two correctional

officers who were present at the time, and William Walker, a former warden with TDCJ.[1]

The evidence, though disputed, was overwhelmingly consistent with Mr. Davis's narrative. Mr. Davis testified that Ms. Ogbebor was the aggressor and that she jerked on his shackles and sprayed him in the back of his head without provocation. Ms. Ogbebor, on the other hand, testified at trial that Mr. Davis kicked her first and that she sprayed him in the face. The other major witnesses testified consistently with Mr. Davis. Officers Miller and Thomas both testified that they were present and saw what happened,[2] that Ms. Ogbebor was the aggressor, and that she sprayed Mr. Davis from behind. Officer Thomas also testified that she was talking face-to-face with Mr. Davis when Ms. Ogbebor sprayed him from behind. As a result, Officer Thomas was caught in the crossfire of Ms. Ogbebor's spray. And William Walker, a former warden with the Texas Department of Criminal Justice, testified that, because Mr. Davis was fully shackled (hands and feet), he could not possibly have kicked Ms. Ogbebor as Ogbebor stated. Additionally, he stated that her force was unnecessarily excessive and that because Mr. Davis was fully shackled, Ms. Ogbebor violated prison regulations when she sprayed him from behind.

Although the Mr. Davis had submitted a written proposed jury charge and objections to the Defendant's proposed jury charge pre-trial, the Court, instead of hearing the parties on their proposed charges, prepared the Court's charge and submitted it to Counsel for review, stating that neither of the parties would like it, thereby implying that the Court overruled the parties' pre-trial submissions and objections that were not included in the

---

[1] The Texas Department of Criminal Justice, the agency that operates Texas prisons, including the one where Mr. Davis was incarcerated when Ms. Ogbebor assaulted him.

[2] At trial, Ms. Ogbebor denied that Officer Thomas was present, but she was impeached with her own prior statements at the disciplinary hearing.

Court's Jury Charge. The parties then reviewed the Court's Charge, and Mr. Davis submitted an additional objection to the nominal damages charge, which the Court granted. Therefore, Mr. Davis objected to the instructions about nominal damages, prison rules and regulations, and qualified immunity. All three instructions were included in the charge to the jury. *See* Dkt. 134 at 4, 6, 9.

The jury was charged and began deliberating. During deliberations, the jury sent a note, indicating that it was considering things other than the evidence before it. The jury asked: "If we say yes she used excessive force, but that she *is* entitled to qualified immunity, will she receive any punishment?" Dkt. 135 (emphasis in original). The punishment they were referring to could not have been civil liability: if the jury found that she was entitled to qualified immunity, then they would answer "no" to question 2 and would not answer either damages question. *See* Dkt. 134 at 13, 14. Mr. Davis's counsel asked for an instruction to the effect that she could not be punished because she no longer worked for that institution, but the request was denied. Rather than telling the jury not to worry about possible consequences or fall-out from its verdict, the Court merely instructed the jury to "refer to the Charge of the Court and continue your deliberations." Dkt. 135.

Despite the overwhelming balance of the evidence, and because of the erroneous instructions, the jury returned a verdict in favor of Ms. Ogbebor on June 6, 2024. Final judgment was entered on June 25, 2024. Dkt. 142.

Mr. Davis therefore files this motion, asking the Court to vacate the judgment and order a new trial.

## Argument & Authorities

Rule 59 provides that federal district courts can order a new trial "based on its

appraisal of the fairness of the trial and the reliability of the jury's verdict. "*Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985) (citing Fed. R. Civ. P. 59). The rule itself does not articulate specific grounds, but federal courts have recognized several, two of which are relevant here. First, a new trial may be granted where the verdict is against the great weight of the evidence. *See, e.g., Cates v. Creamer*, 431 F.3d 456, 460–62 (5th Cir. 2005). Second, a new trial may be granted where erroneous jury instructions affected the outcome of the case. *See, e.g., Baisden v. I'm Ready Productions Inc.*, 693 F.3d 491, 504–06 (5th Cir. 2012). Both grounds warrant a new trial here.

A.     **Great Weight of the Evidence**

The Court has discretion to grant a new trial where the verdict is against the great weight of the evidence. In exercising that discretion, the Court should consider three factors: the simplicity or complexity of the issues; the extent to which the evidence is disputed; and whether the trial has been tainted by "pernicious occurrences." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). Generally, the more complex the issues, the more disputed the evidence, and the more "tainted" the trial, the more likely the verdict was against the great weight of the evidence.

Here, the issues appeared simple, but were in fact complex. The power dynamics in state correctional facilities are complex. The jury was obviously worried about the consequences of the verdict for Ms. Ogbebor. *See* Dkt. 135. But the jury should have been focused on the facts and evidence in front of it, and not on predicting the consequences of its verdict.

The evidence, though disputed, was overwhelmingly consistent with Mr. Davis's narrative. Mr. Davis testified that Ms. Ogbebor was the aggressor and that she jerked on

his shackles and sprayed him in the back of his head without provocation. Ms. Ogbebor, on the other hand, testified at trial that Mr. Davis kicked her first and that she sprayed him in the face. The other major witnesses testified consistently with Mr. Davis. Officers Miller and Thomas both testified that they were present and saw what happened,³ that Ms. Ogbebor was the aggressor, and that she sprayed Mr. Davis from behind. Officer Thomas also testified that she was talking face-to-face with Mr. Davis when Ms. Ogbebor sprayed him from behind, and that as a result Officer Thomas was caught in the crossfire of Ms. Ogbebor's spray. Moreover, William Walker, a former warden with the Texas Department of Criminal Justice, testified that, because Mr. Davis was fully shackled (hands and feet), he could not possibly have kicked Ms. Ogbebor as Ogbebor stated, and additionally, because Mr. Davis was fully shackled, Ms. Ogbebor violated prison regulations when she sprayed him from behind. Another witness testified at length about prison policies and regulations for the use of pepper spray. There was no evidence that Ms. Ogbebor complied with any of those regulations.

And the trial itself, through no fault of the Court, was tainted by "pernicious occurrences." Specifically, the jury was swayed by Ms. Ogbebor's protestations and insinuations that she didn't violate any prison policies and that she would have been punished if she had.

Taken together, these three factors show that the jury's verdict was not based on the evidence but based on other factors. The Court should therefore vacate the judgment and grant a new trial because the verdict was against the great weight of the evidence.

---

³ At trial, Ms. Ogbebor denied that Officer Thomas was present, but she was impeached with her own prior statements at Davis' disciplinary hearing.

B. **Erroneous Jury Charge**

The Court has discretion to order a new trial where erroneous jury instructions probably affected the outcome of the case. Courts in the Fifth Circuit follow a two-step analysis. First, the party seeking a new trial must demonstrate that "the charge as a whole creates 'substantial and ineradicable doubt whether the jury has been properly guided in its deliberations'." *Wright v. Ford Motor Co.*, 508 F.3d 263, 268 (5th Cir. 2007) (citing *Flores v. Cameron County, Tex.*, 92 F.3d 258, 262 (5th Cir. 1996); *EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1096 (5th Cir.1994)). Second, the trial court must determine whether "based upon the entire record . . . the challenged instruction could not have affected the outcome of the case." *Id*. However, even if the Court determines that the Plaintiff's objections to the Jury charge were not preserved, a new trial is required because the Court erred by submitting a defective instruction which violated Mr. Davis's substantial rights. *See* FED. R. CIV. P. 51(d)(2); *Jimenez v. Wood Cty.,* 660 F.3d 841, 845 (5th Cir. 2011). The jury charge was erroneous in three aspects.

**1. Nominal Damages**

First, the jury charge improperly instructed the jury regarding nominal damages. The Court initially sustained Mr. Davis' objection at trial but instructed the jury on nominal damages anyway, even though that part of the Charge was not read to the jury. The jury was not properly guided in its deliberations, as the Court had sustained Mr. Davis's objection to that part of the Charge, and the error was harmful because it led the jury to believe that Mr. Davis did not suffer any actual damages. Dkt. 134 at 9.

6

## 2. Prison Rules and Regulations

Second, the jury charge improperly instructed the jury about prison regulations. Specifically, the charge instructed the jury that Ms. Ogbebor's "failure to follow prison policies or regulations does not establish a violation of a constitutional right." Dkt. 134 at 4. This was error because it overemphasized whether Ms. Ogbebor violated prison regulations when she sprayed a fully shackled inmate from behind (which everybody but her agreed was a violation) rather than whether she violated the Eighth Amendment.

It is the trial court's duty to properly charge the jury. *Banc One Capital Partners v. Kniepper,* 67 F.3d 1187, 1192 (5th Cir. 1995). The trial court must submit to the jury all material issues raised by the pleadings and the evidence. *Broadcast Satellite Intl. v. National Digital TV Ctr., Inc.,* 323 F.3d 339, 342 (5th Cir. 2003).

Each requested instruction must be worded correctly. If a request is not a correct statement of the law, a court is not required to submit it. However, if an incorrectly worded request clearly raises an important legal issue in the case, a court has a duty to frame the instruction correctly and submit it to the jury. *See Jones v. Miles,* 656 F.2d 103, 107 n.6 (5th Cir. 1981). A court may consider plain error in the instructions that affects a party's substantial rights even if the party did not object or waived its objection under Rule 51(d)(1). *See* FED. R. CIV. P. 51(d)(2); *Jimenez v. Wood Cty.,* 660 F.3d 841, 845 (5th Cir. 2011).

Specifically, in the instant case, a new trial is required because the Court erred by submitting a defective instruction on "Prison Rules and Regulations" to the jury. *See*

*Goodgame v. American Cast Iron Pipe Co.,* 75 F.3d 1516, 1521 (11th Cir. 1996).  The erroneously submitted instruction read as follows:

> You are instructed that a prison's internal rules and regulations do not alone create federally protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.

This submitted instruction affected Mr. Davis's substantial rights even if the Court finds that he did not object to it or waived his objection to it because the key evidence in the case involved defendant Ogbebor's clear violations of prison policies and regulations and that her violations resulted in Davis being injured.  By submitting this instruction to the jury, it was led to believe that the defendant Ogbebor's violations of policy and regulations were not relevant to the question of whether she violated Mr. Davis's constitutional rights by using excessive force against him.

Further, the Court's submitted instruction regarding prison rules and regulations is not listed in the Fifth Circuit's pattern jury charges, nor has Mr. Davis located any Circuit's pattern jury charges with that language.  Moreover, Mr. Davis has not located any case law regarding the use of that language in the jury charge.  The cases cited by the Defendant to support the instruction in her proposed Jury Charge, which language the Court adopted verbatim in its Charge, do not involve lawsuits that utilized that language in the jury charge as most cases involved a summary judgment and the issues involved were alleged due process violations, rather than a violation of the Eighth Amendment.

For instance, the Defendant cited *Lewis v. Sec'y of Pub. Safety & Corrections* in support of her requested charge, however, the issue in that summary judgment case was

whether the strip searches were unconstitutional and a violation of prison policy. The Court held, "A state's failure to follow its own procedural regulations does not establish a violation of due process, because 'constitutional minima may nevertheless have been met.'" *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 n.8 (5th Cir. 2017). In support of its holding, the Court cited to *Sandin v. Conner*, 515 U.S. 472, 487, (1995); *Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam); and *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (per curiam) -the same cases cited by the Defendant in her proposed Charge.

Further, In *Sandin v. Conner,* a summary judgment case, the issue was whether the Plaintiff was denied due process because the prison refused to allow him to present witnesses during his disciplinary hearing. *Sandin v. Conner*, 515 U.S. 472, 487, (1995).

Moreover, In *Jackson v. Cain,* another summary judgment case, the issue was whether the prison officials failed to follow process as outlined in the DOC handbook. *Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989).

Additionally, In *Myers v. Klevenhagen,* another summary judgment case, the issue was whether the inmate's due process rights were violated when the prison debited his trust account for medical expenses. The Court held that, "Case law is clear, that a prison's own policies, procedures, or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam).

Finally, in *Hernandez v. Estelle,* a First Amendment case alleging a violation of free speech, the Plaintiff's claim was that his constitutional rights were violated because the 48

hour requirement of the rules in effect at that time was not met. The claim was that the mere failure of the TDC officials to follow their regulations was a constitutional violation. The Court held that there was no such controlling constitutional principle. *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (per curiam).

Thus, the cases cited by the Defendant in support of her requested jury instruction regarding prison rules and regulations, and presumedly relied upon by the Court, are inapposite and have no relevance to the instant case. The instant case does not involve a procedural due process violation or allegation that prison officials merely broke the rules. Mr. Davis complained of a violation of his Eighth Amendment right to be free from cruel and unusual punishment, not a procedural violation. Although Mr. Davis complained that the use of unprovoked excessive force was a violation of TDCJ policy, which it is, it is also a Constitutional violation of clearly established law. *McCoy v. Alamu*, 141 S.Ct. 1364 (2021). Therefore, the inclusion of the "Prison rules and Regulations" charge to the Jury was erroneous and a violation of Mr. Davis's substantial rights.

Assuming *arguendo* that an instruction on "Prison Rules and Regulations" should have been submitted, an alternative instruction that would have been required to remedy the error would read substantially as follows:

> You are instructed that a prison's internal rules and regulations do not alone create federally protected rights and a prison official's failure to follow prison policies of regulations does not <u>in and of itself</u> establish a violation of a constitutional right. <u>However, you may weigh a prison official's failure to follow prison policies or regulations in making a determination as to whether that person acted maliciously or sadistically with the intent to cause an inmate harm</u>.

Therefore, the failure to submit an instruction in substantially correct form violated Mr.

10

Davis's substantial rights and makes a new trial appropriate.

### 3. Qualified Immunity

Finally, the jury charge improperly instructed the jury about qualified immunity. Whether an officer has qualified immunity for violating a constitutional right turns on whether the constitutional right violated was "clearly established" at the time of the violation. *See, generally, Taylor v. Riojas*, 592 U.S. 7 (2020) (discussing the contours of qualified immunity in the Eighth Amendment context). Here, the charge told the jury only that "the clearly established law at the time was that prison inmates have the constitutional right to be free from excessive and unnecessary force." Dkt. 134 at 7. The charge should have instructed the jury what those terms mean, to the extent possible. For example, prison officials have fair warning that the unprovoked use of force violates the Eighth Amendment. *See McCoy v. Alamu*, 950 F.3d 226, 235 (5th Cir. 2020) (Costa, J., dissenting[4]) (citing several cases where the unprovoked use of force was found to be a clearly established violation of constitutional rights). Because it did not do so, the charge was erroneous.

### Conclusion

In conclusion, the great weight of the evidence showed that Ms. Ogbebor violated Mr. Davis's constitutional right to be free from cruel and unusual punishment when she sadistically or maliciously jerked his shackles and sprayed him with chemical agents. The

---

[4] The majority in *McCoy* determined that the unprovoked use of pepper spray was not a "clearly established" violation of the Eighth Amendment. *McCoy*, 950 F.3d at 234. The Supreme Court disagreed and vacated the opinion. *McCoy v. Alamu*, 141 S.Ct. 1364 (2021).

jury tended to agree but was misled by its concerns over prison policy and whether she would be punished.

Further, the erroneous jury charge, consisting of three errors, individually and collectively, probably affected the outcome of the case, and violated Mr. Davis's substantial rights. In the context of the evidence, there is substantial and ineradicable doubt regarding whether the jury's deliberations were properly guided. Mr. Davis's substantial rights were violated because the prison rules and regulations instruction relevant to due process claims was not applicable to this case and should not have been part of the Charge to the Jury, as it only misled them into thinking that only prison policies were at issue. The jury specifically asked whether Ms. Ogbebor would be "punished" for using excessive force. Dkt. 135. But they should not have been concerned about that. Mr. Davis's requested instructions would have properly guided the jury into ignoring whether Ms. Ogbebor would be "punished" for her actions (i.e., for violating prison policy) and into focusing solely on whether her actions violated the Constitution.

Additionally, in response to the jury's note, the Court should have instructed the jury not to be concerned with possible consequences or fall-out from its verdict. It did not. The lack of that instruction affected the outcome of the case. The jury was so concerned about whether Ms. Ogbebor would be "punished" that it reached a verdict to protect her from punishment rather than answering the questions asked: whether she violated the Eighth Amendment when she used excessive force.

If the jury had been properly instructed, it would have reached a verdict in accordance with the evidence.

**Prayer**

WHEREFORE PREMISES CONSIDERED, Mr. Davis prays that the Court vacate the judgment, grant a new trial, and grant such other and further relief to which Mr. Davis may be entitled.

                    Respectfully submitted,

                    /s/ Julia C. Hatcher
                    Julia Catherine Hatcher
                    Texas Bar No. 24004692
                    1622 Campbell Lane
                    Galveston, Texas 77551
                    Tel: (409) 599-6685
                    Fax: (281) 715-4284
                    Email: juliachatcher@gmail.com

OF COUNSEL:
MARK ARONOWITZ
JEREMY M. MASTEN

**Certificate of Service and Conference**

I certify that on July 22, 2024, I emailed Defendant's counsel, Jordan Ninh and Brandon Livengood, regarding this motion and whether they were opposed. On July 23, 2024, I called Jordan Ninh and left a message that if I had not heard from him by Noon, I would consider that he was opposed to the Motion and I would file it. Not hearing from either of them by Noon, I served them with a copy of the foregoing instrument, which was electronically filed on CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorneys in charge for defendant, Angela Ogbebor:

> Jordan Ninh
> Branden Livengood
> Office of the Attorney General
> Law Enforcement Defense Division P.O. Box 12548
> Austin, TX 78711-2548
> Tel.: (512) 463-2080
> Fax: (512) 370-9814
> Email: jordan.ninh@oag.texas.gov
>         brandon.livengood@oag.texas.gov

/s/ Julia C. Hatcher
Julia C. Hatcher